IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-00445-PAB-KLM

ZVELO, INC., a Delaware corporation,

　　Plaintiff,

v.

SONICWALL, INC., a California corporation,

　　Defendant.

_____

# ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on **Defendant SonicWALL, Inc.'s Motion for Protective Order** [Docket No. 155; Filed December 3, 2012] (the "Motion").[1] On December 10, 2013, Plaintiff filed a Response [#161]. The Motion is ripe for review. The Court has reviewed the Motion, the Response, the entire docket, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion is **DENIED**.

## I. Background

This is a patent dispute in which Plaintiff alleges that Defendant is infringing on United States patent number 6,961,773 issued on November 1, 2005 (the "773 Patent"), United States patent number 8,180,909 issued on May 15, 2012, and United States patent

---

[1] The parties complied with the undersigned's Discovery Dispute Hearing Procedures by calling chambers before filing a discovery-related motion, and the undersigned gave Defendant permission to file this written discovery motion [#149].

number 8,266,304 issued on September 11, 2012, of which it claims ownership. *Second Am. Compl.* (hereinafter, "Compl.") [#138] at ¶¶ 9-10, 12-13, 20-21, 40-42, 44-46, 127, 130-31, 166, 176-78, 186-87, 196-97, 205-07, 215-16, 226. In response to Plaintiff's allegations, Defendant filed its Answer asserting affirmative defenses and counterclaims against Plaintiff seeking a declaratory judgment that Plaintiff's patents are invalid and that Defendant did not infringe on the patents. *Ans.* [#139] at 22-35. One of the affirmative defenses Defendant asserts is that Plaintiff's damages are limited pursuant to the doctrine of intervening patent rights as codified at 35 U.S.C. § 287. *Id.* at 21.

The Motion seeks "a protective order limiting the applicable damages period to November 2010 to the present." *Motion* [#155] at 10. At issue is production of information responsive to one request for production of documents and one interrogatory. *Id.* at 4-5. They are as follows:

> **Document Request No. 11**: All financial statements which show your gross revenues, net revenues, profits, profit margins, charts of accounts, balance sheets, profit and loss statements, and other financial statements, for the time period January 1, 2000, to the present.
>
> **Interrogatory No. 1**: Identify each Product you sold during the time period January 19, 2000, to the present and for each, describe: (a) any name associated with the Product; (b) in detail the operation and function of the Product; (c) the annual sales and net profits of each Product; [and] (d) the percentage each product represents of your total sales and net profits for each year of the period.

*Id.* at 4 (the "Requests"). Plaintiff later agreed to limit the Requests to the period of November 1, 2005, the date of the issuance of the 773 Patent, the earliest patent in dispute, to the present. *Id.* Plaintiff further agreed to limit the Requests to production of a spreadsheet that includes certain information relating to Defendant's sales and profits for each "appliance," software application or service, and "additional services" instead of

production of all of the underlying documents and information. *Resp.* [#161] at Ex. B.

Defendant argues "that only financial discovery after November 2010 should have to be produced." *Motion* [#155] at 5. Defendant bases this argument on its position that the Requests are not likely to lead to the discovery of admissible evidence because the 773 Patent was reexamined and "the claims of the [773 Patent] were clearly substantively changed" as a result. *Id.* at 7-8. Defendant further claims that "[u]nder the doctrine of intervening rights, where a patent claim is substantively changed during reexamination, a patent owner may only recover damages for patent infringement from the date the Reexamination Certificate was issued." *Id.* at 7. Therefore, Defendant argues that the proper period for discovery is November 2, 2010, the date the Reexamination Certificate was issued, to the present. *Id.* at 8. In addition, Defendant argues that the Requests are burdensome and intrusive. *Id.* at 8-10.

In its Response, Plaintiff argues that Defendant should be required to produce the requested financial data from the date of issuance of the 773 Patent, November 1, 2005, to the present. *Resp.* [#161] at 1. Plaintiff claims that Defendant should not be able to limit discovery based on an asserted but unproven affirmative defense, namely the doctrine of intervening patent rights as codified at 35 U.S.C. § 287. *Id.* at 2. Instead, Plaintiff argues "[t]he effect, if any, of the doctrine of intervening patent rights on [Plaintiff's] damages claim should be dealt with at trial or, at the earliest, at the summary judgment stage after claim construction has occurred." *Id.* at 4.

## II. Analysis

Pursuant to Fed. R. Civ. P. 26(b)(1), "parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action

. . . ." Fed. R. Civ. P. 26(b)(1). "The Court broadly construes relevancy, and a request for discovery should be considered relevant if it is possible that the information sought *may be relevant to the claim or defense of any party*." *Tara Woods Ltd. P'ship. v. Fannie Mae*, 265 F.R.D. 561, 567 (D. Colo. 2010) (emphasis added) (citing *Bonanno v. Quizno's Franchise Co.*, 255 F.R.D. 50, 552 (D. Colo. 2009)). Further, the scope of discovery is broad and "is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues." *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519 (10th Cir. 1995) (citation omitted). Considering that "[l]imitations on the discovery process necessarily conflict with the 'fundamental principle that the public . . . has a right to every man's evidence,'" the Federal Rules of Civil Procedure broadly define the scope of discovery. *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 356 (D. Colo. 2004) (citing *Trammel v. United States*, 445 U.S. 40, 50 (1980)). The Court may, however, forbid certain disclosures or discovery, specify terms for certain disclosure or discovery, forbid inquiry into certain matters, or limit the scope of disclosures or discovery to certain matters to protect a party from undue burden and expense. *See* Fed. R. Civ. 26(c)(1).

A party objecting to discovery bears the burden of establishing the information is irrelevant "by demonstrating the information does not come within the scope of relevance as defined by Fed. R. Civ. P. 26(b)(1), or is of such marginal relevance that the harm in producing the information outweighs the presumption in favor of broad disclosure." *Tara Woods Ltd. P'ship*, 265 F.R.D. at 567 (citations omitted). "Conversely, when the request is overly broad on its face or when relevancy is not readily apparent, the party seeking discovery has the burden to show the relevancy of the request." *Id.* (quotation omitted). Further, the objecting party cannot "sustain this burden with boilerplate claims that the

requested discovery is oppressive, burdensome or harassing." *Simpson*, 220 F.R.D. at 359 (citation omitted).

The decision to issue a protective order rests within the sound discretion of the trial court. *Wang v. Hsu*, 919 F.2d 130, 130 (10th Cir. 1990). Fed. R. Civ. P. 26(c) allows the Court to limit the discovery of certain information. A protective order may issue upon a showing of good cause "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c). The good cause standard of 26(c) is not met by the conclusory statements of the opposing party. *Klesch & Co. Ltd. v. Liberty Media Corp.*, 217 F.R.D. 517, 524 (D. Colo. 2003). Instead, "the party seeking a protective order must show that disclosure will result in a clearly defined and serious injury to that moving party." *Id.* (citing *Exum v. United States Olympic Comm.*, 209 F.R.D. 201, 206 (D.Colo. 2002)). As a general rule, the "good cause" calculation requires that the Court balance "the [moving] party's need for information against the injury which might result from unrestricted disclosure." *Id.* (citations omitted). In addition, the Court should consider any privacy interests that may be implicated and whether the case involves issues that may be important to the public. *Id.* Further, "[r]ules that limit access, encourage secrecy or curtail participation must be strictly construed because they run counter to the great countervailing principles of openness and participation." *Visor v. Sprint/United Mgmt. Co,* No. CIV.A. 96-K-1730, 1997 WL 567923 at *2 (D. Colo. Aug. 18, 1997).

### A.    Effect of Reexamination

As Plaintiff argues, "[u]ntil [Defendant] seeks–and obtains–a ruling related to the doctrine of intervening patent rights, the mere existence of the [affirmative] defense should have no determinative impact on the scope of discovery." *Resp.* [#161] at 5; *see Xerox*

*Corp. v. Int'l Bus. Machs. Corp.*, 75 F.R.D. 668, 671 (S.D.N.Y. 1977) (finding that the words "xerographic office copiers" found in the pleadings did not limit discovery to only office copiers and ordering discovery of information relating to non-office copiers).  Here, the Court held a *Markman* hearing regarding claim construction on February 7, 2013 [#170].  The Court has not yet entered a decision regarding claim construction nor has the Court been asked to decide the merits of Defendant's affirmative defenses.  As a result, Plaintiff's claims and Defendant's affirmative defenses and counterclaims are alive and well.  Therefore, the information sought for the period November 1, 2005 through the present "may be relevant to the claim or defense of any party."  *Tara Woods Ltd. P'ship*, 265 F.R.D. at 567; Fed. R. Civ. P. 26(b)(1).  Specifically, the information may be relevant to Plaintiff's claims against Defendant, and Defendant's assertion of an affirmative defense does not negate Plaintiff's right to take discovery of relevant information.  To hold otherwise would allow any party to assert a variety of affirmative defenses that may or may not be legitimate simply as a means to limit discovery.  That is contrary to the purpose of Fed. R. Civ. P. 26(b)(1).  See *Tara Woods Ltd. P'ship*, 265 F.R.D. at 567 ("a request for discovery should be considered relevant if it is possible that the information sought may be relevant to the claim or defense of any party.").

**B.     Undue Burden**

Defendant also objects to production of information responsive to the Requests dated November 1, 2005 through November 2, 2010, the date of issuance of the Reexamination Certificate, because production would be unduly burdensome.  *Motion* [#155] at 8-10.  Pursuant to Fed. R. Civ. P. 26(b)(2)(C), where the burden of producing relevant discovery outweighs the likely benefit, the Court has discretion to limit the

discovery requested. *See Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, No. 01-cv-01644-REB-CBS, 2010 WL 502721, at *9 (D. Colo. Feb. 8, 2010); *Qwest Commc'ns Int'l v. Worldquest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003). In weighing these considerations, the Court should "tak[e] into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii). However, the Court is not obligated to "make formal and explicit findings regarding each of the[se] factors." *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1194 (10th Cir. 2009).

Defendant bears the burden to show that responding to the discovery requests at issue would be unduly burdensome. *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 102 n.16 (1981) (stating that the party seeking the protective order must submit "a particular and specific demonstration of facts, as distinguished from stereotyped and conclusory statements" (internal quotations and citations omitted)); *Klesch & Co. v. Liberty Media Corp.*, 217 F.R.D. 517, 524 (D. Colo. 2003); *see also United Fin. Cas. Co. v. Lapp*, No. 12-cv-00432-MSK-MEH, 2013 WL 394191, at *2 (D. Colo. Feb. 1, 2013) ("movant must show specific facts demonstrating that the challenged discovery will result in a clearly defined and serious injury to the party seeking protection"). This burden can only be met by providing sufficient details or "a compelling showing of undue burden" to obviate the overwhelming preference for requiring that relevant discovery materials be exchanged. *Cartel Asset Mgmt.*, 2010 WL 502721 at *15 (citing *In re Zurn Pex Plumbing Prods. Liab. Litig.*, MDL No. 08-1958 ADM/RLE, 2009 WL 1606653, at *2 (D. Minn. June 5, 2009)). The Court must balance Plaintiff's need for the discovery at issue against the burden imposed on Defendant. *See*

*International Broth. of Teamsters, Airline Div. v. Frontier Airlines, Inc.*, No. 11-cv-02007-MSK-KLM, 2012 WL 1801979, at *7 (D. Colo May 16, 2012) (citation omitted).

Here, Defendant has failed to meet its burden of establishing that production of the spreadsheet requested by Plaintiff, which would include information for the period November 1, 2005 through the present, would be unduly burdensome. Defendant submitted an affidavit of its Accounting Director, Robert Knauff, in support of its Motion. In his affidavit, Mr. Knauff states that the Requests are unduly burdensome because "to pull the electronic financial information going back to November 2005 would require well over a hundred hours (e.g. 120 hours) of labor from the individual members of" the accounting group. *Knauff Aff.* [#155-1] at ¶ 5. Mr. Knauff claims this would be "highly disruptive of [Defendant's] business activities." *Id.* at ¶ 4. However, Mr. Knauff's estimate of the amount of work required to put the information together appears to be based on the Requests as originally requested. *See, e.g., Motion* [#155] at 4 (describing the Requests but failing to inform the Court that Plaintiff agreed to limit the Requests to one spreadsheet), 9 (arguing that Plaintiff has requested "all financial statements and other financial statements from January 1, 2000 to the present."); *Declaration of James C. Yoon in Support of Defendant SonicWALL, Inc.'s Motion for Protective Order* [#155-2], Ex. C, (attaching the Requests as originally drafted), Ex. F (attaching Defendant's August 13, 2012 letter regarding the Requests but not Plaintiff's October 1, 2012 response limiting the information requested). Further, while the Court is mindful that Mr. Knauff's estimate of the time needed to respond to the Requests may be the same regardless of whether Defendant puts the information into a spreadsheet or prints it out, the Court does not find that this expense "is unreasonable in light of the benefits to be secured from the discovery." *Cardenas v. Dorel*

*Juvenile Grp., Inc.*, 232 F.R.D. 377, 380 (D. Kan. 2005). The information sought–information about Defendant's profits resulting from its alleged infringing activity–is Plaintiff's only way to establish damages in this case. In addition, Defendant has already produced this information for the period November 2010 to the present, *Resp.* [#161] at 9, and Mr. Knauff fails to describe how producing the same financial data for the period November 2005 to November 2010 would be substantially more difficult or burdensome. Further, Mr. Knauff indicates that Defendant does not have any data prior to May 2006 when Defendant "updated its IP systems," *id.* at ¶ 7; as a result there is no burden associated with producing data prior to May 2006 because it cannot be produced. Therefore, the Court finds that Defendant has not met its burden of establishing that production of the spreadsheet requested by Plaintiff would be unduly burdensome.

### III. Conclusion

Accordingly,

IT IS HEREBY **ORDERED** that Defendant SonicWALL, Inc.'s Motion for Protective Order [#155] is **DENIED**. Defendant shall produce the spreadsheet agreed to by Plaintiff **on or before June 14, 2013**.

Dated: May 29, 2013

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge