IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 06-cv-00445-PAB-KLM

ZVELO, INC.,

      Plaintiff,

v.

SONICWALL, INC.,

      Defendant.

---

## ORDER

---

    This matter is before the Court on the Partial Motion to Dismiss [Docket No. 141] filed by plaintiff zvelo, Inc. ("zvelo").[1]  The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338.

## I.  BACKGROUND

    On March 13, 2006, zvelo filed this case alleging that defendant SonicWALL, Inc. ("SonicWALL") infringed various claims of United States Patent No. 6,961,773 (the "'773 patent").[2]  *See* Docket No. 1.  zvelo also filed five additional cases in this district alleging that five other defendants used systems that infringed claims of the '773 patent.  *See* Docket No. 58 at 3 n. 1 (listing cases).  On January 8, 2007, two defendants from zvelo's related cases – Blue Coat Systems, Inc. and St. Bernard

---

[1]On January 12, 2012, the magistrate judge granted zvelo's oral motion to change plaintiff's name on the docket from eSoft, Inc. to zvelo, Inc.  *See* Docket No. 89.

[2]zvelo owns all rights, title and interest in, and has standing to sue for infringement of the '773 patent.

Software, Inc. – filed an Inter Partes Request for Reexamination of the '773 patent with the United States Patent and Trademark Office ("PTO"), alleging that all of the claims of the '773 patent were invalid. Docket No. 58 at 4-5. The PTO granted the request for reexamination.

On January 23, 2007, SonicWALL filed a motion to stay this case pending the resolution of the reexamination proceedings, Docket No. 58, which the Court granted on February 12, 2007. Docket No. 67. On November 2, 2010, the PTO issued an Inter Partes Reexamination Certificate for the '773 Patent and confirmed the patentability of claims 1, 2, 3, 5, and 8 as amended and of claims 4, 6, and 7 without amendment. *See* Docket No. 77-1 at 6. On September 9, 2011, zvelo filed a motion to reopen the case, Docket No. 77, which the Court granted on November 8, 2011. Docket No. 79.

On August 31, 2012, zvelo filed a Second Amended Complaint [Docket No. 138], asserting claims against SonicWALL for direct infringement, inducing infringement, and contributory infringement of the '773 patent, Docket No. 138 at 5-19; direct infringement, inducing infringement, and contributory infringement of United States Patent No. 8,180,909 (the "'909 patent"), *id*. at 20-23; and direct infringement, inducing infringement, and contributory infringement of United States Patent No. 8,266,304 (the "'304 patent"). *Id*. at 24-28.

On September 17, 2012, SonicWALL filed an answer. Docket No. 139. In its answer, SonicWALL raises defenses to zvelo's claims and asserts several counterclaims against zvelo. *See* Docket No. 139. Relevant to the issues raised in the present motion, SonicWALL asserts a counterclaim seeking a declaratory judgment that the '773 patent is unenforceable due to zvelo's inequitable conduct in front of the PTO.

2

*Id*. at 28-35.  SonicWALL alleges that Rodney Holm and John Elton Dietrich, II, two of the named inventors of the '773 patent, "and/or other [sic] substantively involved in the preparation and original examination of the application," *id*. at 28, ¶ 44, breached their duty of candor and good faith dealing during the prosecution of the '773 patent. Specifically, SonicWALL asserts that Holm and Dietrich failed to disclose four prior art systems that allegedly contain material information pertinent to the patentability of the '773 patent: (1) the SoftPak Director system; (2) the BlueLinQ system; (3) the Instagate system; and (4) the Team Internet system.  *Id*. at 28-34.  In addition, SonicWALL asserts that the '773 patent is unenforceable because Dietrich improperly signed a declaration of inventorship even though Dietrich did not contribute to any claim or element disclosed in the '773 patent.  *Id*. at 35.

On October 1, 2012, zvelo filed the present motion requesting that the Court dismiss SonicWALL's inequitable conduct counterclaim.  Docket No. 141.  zvelo argues that SonicWALL's counterclaim fails to meet the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure and, therefore, should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## II.  STANDARD OF REVIEW

Application of Rule 12(b)(6) in patent cases is a procedural question and, therefore, is governed by the law of the regional circuits.  *See McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355-56 (Fed. Cir. 2007).  To survive a motion to dismiss pursuant to Rule 12(b)(6), the complaint need not allege specific facts, but need only give defendants fair notice of what the claim is and the grounds upon which it rests.

*Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. at 678.

## III.  ANALYSIS

zvelo argues that SonicWALL fails to state a claim upon which relief may be granted because the allegations in support of its inequitable conduct counterclaim do not comply with Fed. R. Civ. P. 9(b) as applied by the Federal Circuit in *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1325-31 (Fed. Cir. 2009).  Docket No. 141 at 5-10.[3]

Generally, individuals involved with the filing and prosecution of a patent application before the PTO are subject to a duty of candor and good faith dealing.  37 C.F.R. § 1.56(a).  A breach of the duty of candor may give rise to a claim of inequitable

---

[3]SonicWALL argues that zvelo violated the Court's Practice Standards because zvelo did not confer prior to filing the present motion to dismiss.  Docket No. 143 at 1. Local Rule 7.1 states that the "court will not consider any motion, other than a motion under Fed. R. Civ. P. 12 or 56, unless counsel for the moving party . . ., before filing the motion, has conferred or made reasonable, good-faith efforts to confer with opposing counsel . . . ."  D.C.COLO.LCivR 7.1.A.  Plaintiff's motion is brought pursuant to Fed. R. Civ. P. 12(b)(6).  Thus, it is not subject to the requirement of advance conferral.  Given that zvelo sent SonicWALL an email on September 7, 2012 explaining why it believed that SonicWALL's counterclaims did not satisfy the pleading requirements of Rule 9(b), *see* Docket No. 147-1, the Court finds no violation of PAB Practice Standards (Civil Cases) III.F.2.a.

conduct.  *See Ferring B. V. v. Barr Lab., Inc.*, 437 F.3d 1181, 1186 (Fed. Cir. 2006).  To

state a claim of inequitable conduct, a party must allege with particularity that "(1) an

individual associated with the filing and prosecution of a patent application made an

affirmative misrepresentation of a material fact, failed to disclose material information,

or submitted false material information; and (2) the individual did so with a specific

intent to deceive the PTO."  *Exergen Corp.,* 575 F.3d at 1327 n. 3 (citing *Star Scientific,*

*Inc. v R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008)).  Whether

inequitable conduct has been adequately pled is a question of Federal Circuit law,

because it "pertains to or is unique to patent law."  *Id*. at 1326.

Even though a claim of inequitable conduct is a broader concept than fraud, a

party asserting such a claim must satisfy the particularity requirement of Rule 9(b).  *Id.*

Rule 9(b) requires that, in a pleading "alleging fraud or mistake, a party must state with

particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  To

plead inequitable conduct with the requisite particularity, "the pleading must identify the

specific who, what, when, where, and how of the material misrepresentation or

omission committed before the PTO."  *Exergen*, 575 F.3d at 1328.  In addition,

although knowledge and intent may be averred generally, "a pleading of inequitable

conduct under Rule 9(b) must include sufficient allegations of underlying facts from

which a court may reasonably infer that a specific individual (1) knew of the withheld

material information or of the falsity of the material misrepresentation, and (2) withheld

or misrepresented this information with a specific intent to deceive the PTO."  *Id*. at

1328-29.  "A reasonable inference is one that is plausible and that flows logically from

5

the facts alleged, including any objective indications of candor and good faith."[4]  *Id*. at

1329 n. 5 (citations omitted).  Rule 9(b) allows pleadings based on "information and

belief" so long as "the pleading sets forth the specific facts upon which the belief is

reasonably based."  *Id*. at 1330.  However, a pleading that simply avers the substantive

elements of inequitable conduct, without setting forth the particularized factual bases for

the allegation, does not satisfy Rule 9(b)'s pleading standard.  *Id*. at 1327.

### 1.  *SoftPak Director System*

SonicWALL alleges that Dietrich was a developer of the SoftPak Director system

at the time of the filing of the patent application for the '773 patent, Docket No. 139 at

28-29, ¶¶ 44-49, 52; Dietrich understood that the SoftPak Director system is designed

and functions as a subscription management server, *id*. at ¶ 53; Dietrich was

substantially involved in drafting the SoftPak Director technical manual, *id*. at 29, ¶ 51;

Dietrich and Holm did not disclose the SoftPak Director system or its technical manual

to the PTO, *id*. at ¶ 56; and Dietrich and Holm withheld the SoftPak Director system

from the patent examiner even though they had a duty to disclose material information

and both believed that the SoftPak Director system was "highly material" prior art.  *Id*. at

---

[4]In *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1289 (Fed. Cir. 2011), the Federal Circuit heightened the standard to prove an inequitable conduct claim on the merits and held that, to establish inequitable conduct, "the accused infringer must prove by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it."  *Id*. at 1290.  Thus, to succeed on the merits, a party alleging inequitable conduct must now show but-for materiality such that the specific intent to deceive is "the single most reasonable inference able to be drawn from the evidence."  *Id*. (citation omitted). However, at the pleading stage, a party need only satisfy the *Exergen* standard wherein "[a] reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith."  575 F.3d 1312, 1329 n. 5.

29-30, ¶¶ 57-58.  In addition, SonicWALL claims that the SoftPak Director system

"renders at least claims 1-3 and claims 5-8 of the '773 Patent anticipated and/or

obvious" and the '773 patent would not have issued had the SoftPak Director system

been disclosed to the patent examiner.  *Id*. at 30, ¶ 58.

To sufficiently allege the first element of an inequitable conduct claim,

SonicWALL must assert with particularity that a zvelo representative, subject to the duty

of candor, knew of the SoftPak Director system, appreciated the materiality of the

SoftPak director system, and decided not to disclose the SoftPak director system to the

PTO.  *Delano Farms Co. v. The CA Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed.

Cir. 2011).

First, zvelo argues that SonicWALL's counterclaim fails to allege "who"

committed the alleged inequitable conduct.  Docket No. 141 at 5.  SonicWALL

specifically identifies two individuals – Holm and Dietrich – who are named inventors of

the '773 patent subject to the duty of candor.  As to Holm and Dietrich, the Court finds

that SonicWALL sufficiently alleges "who" failed to disclose material information.  *See*

*Exergen*, 575 F.3d at 1329.  However, specificity as to two individuals does not give

SonicWALL license to append the vague phrase "and/or other [sic] substantively

involved in the preparation and original examination of the application," Docket No. 139

at 28, ¶ 44, or to refer to other unnamed persons through use of the phrases "nor any of

the other inventors or prosecuting attorneys," *id*. at 29, ¶ 56, or "at least."  *Id*. at 30,

¶ 59.

Second, zvelo contends that SonicWALL does not sufficiently allege the "what"

and "where" circumstances of an inequitable conduct counterclaim with particularity.

7

Docket No. 141 at 6.  Specifically, zvelo argues that SonicWALL does not identify what information contained in the SoftPak Director system anticipates the limitations and elements of claims 1-3 and claims 5-8 of the '773 patent.  *Id*. at 6-7.

In its counterclaim, SonicWALL identifies the SoftPak Director system as relevant prior art and lists seven claims of the '773 patent to which it alleges the SoftPak Director system applies.  Docket No. 139 at 30, ¶ 58.  However, SonicWALL does not identify the specific elements or limitations of claims 1-3 and claims 5-8 of the '773 patent to which the SoftPak Director system applies and where these limitations are disclosed in the technical manuals of the SoftPak Director system.  Without an allegation of what specific information contained in the SoftPak Director technical manuals allegedly anticipates the claims of the '773 patent, SonicWALL's allegations do not set "forth the particularized factual bases" in support of the circumstances of an inequitable conduct claim.  *Exergen*, 575 F.3d at 1327; *see, e.g., Cent. Admixture Pharm. Servs., Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1357 (Fed. Cir. 2007) (noting that a pleading did not satisfy Rule 9(b) because it did not allege "what 'measurements and units' were manipulated, or how that manipulation was meant to mislead the PTO").  Although SonicWALL is not required to prove its case in the pleadings, it must at a minimum provide some detail about what information contained in the technical manuals of the SoftPak Director system describes the functions that the SoftPak Director system performs as a subscription management server and where this information can be found.  *Exergen*, 575 F.3d at 1330 (noting that a "reference may be many pages long, and its various teachings may be relevant to different applications for different reasons").  Because SonicWALL does not identify any information contained in

the SoftPak Director technical manuals with particularity, the Court finds that SonicWALL does not sufficiently allege the "what" and "where" circumstances of its inequitable conduct counterclaim.

Third, zvelo contends that SonicWALL does not sufficiently allege "how" or "why" the information in the technical manuals of the SoftPak Director system are material to the claims of the '773 patent.  Docket No. 141 at 7-9.  In its counterclaim, SonicWALL avers generally that the SoftPak Director system is "highly material prior art" because it is designed as and functions as a subscription management server.  Docket No. 139 at 29-30, ¶¶ 53-57.  However, the counterclaim is silent with regard to how the SoftPak Director system allegedly anticipates or renders obvious the claims of the '773 patent either by itself or in combination with other prior art.  *See Exergen*, 575 F.3d at 1330; 37 C.F.R. § 1.56(b)(1) (noting that information is material if it "establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim").  The fact that the SoftPak Director system discloses a subscription management server, by itself, does not make the SoftPak Director system material because, as SonicWALL's counterclaim alleges, many other prior art references disclose subscription management servers.  *See* Docket No. 139 at 29, ¶ 54.  Thus, in order to sufficiently allege how the SoftPak Director system is material, SonicWALL must identify with particularity a specific function or limitation disclosed in the technical manuals of the SoftPak Director system and allege how this function or limitation anticipates the claims of the '773 patent.  *See id.* at 1330.  Because SonicWALL does not identify a function or limitation disclosed in the SoftPak Director system, the Court cannot reasonably infer the materiality of the SoftPak Director system.  *Id.* at 1327.

Thus, the Court finds that SonicWALL does not allege with particularity the "why" or "how" circumstances of its inequitable conduct claim. *Id.* at 1330.

Based on the foregoing factual deficiencies, the Court finds that SonicWALL fails to allege with particularity the factual bases for the first element of its inequitable conduct counterclaim. *Id.* at 1330 (noting that failure to allege the first element of an inequitable conduct claim is sufficient to dismiss the claim for failure to satisfy Rule 9(b)).

With regard to the second element, SonicWALL's allegations do not sufficiently allege that Holm and Dietrich intended to deceive the PTO. As *Exergen* notes, an intent to deceive the PTO may not be inferred solely from some level of knowledge of a prior art reference. 575 F.3d at 1331 (noting that "[t]he mere fact that an applicant disclosed a reference during prosecution of one application, but did not disclose it during prosecution of a related application, is insufficient to meet the threshold level of deceptive intent required to support an allegation of inequitable conduct"). When viewed as a whole, SonicWALL's pleading does not meet the threshold showing necessary for the Court to infer that Holm and Dietrich knew of the specific material information in the technical manuals of the SoftPak Director System and deliberately withheld this material information from the PTO. *Id.* In other words, the Court cannot reasonably infer from the facts alleged that Holm and Dietrich made a deliberate decision not to disclose the SoftPak Director system to the PTO.

Therefore, because SonicWALL's allegations are deficient with regard to both Holm and Dietrich's knowledge of specific material information and Holm and Dietrich's intent to deceive the PTO, the Court will dismiss SonicWALL's inequitable conduct

10

counterclaim based on Holm and Dietrich's alleged failure to disclose the SoftPak

Director system. *Exergen*, 575 F.3d at 1331.

### 2. *BlueLinQ System*

SonicWALL alleges that Holm knew of and was aware of the BlueLinQ system

before he filed a patent application for the '773 patent, Docket No. 139 at 30, ¶ 60;

believed that the BlueLinQ system is designed and functions as a subscription

management server, *id*. at ¶ 61; did not disclose the BlueLinQ system or its technical

manual to the PTO, *id*. at 30-31 ¶¶ 62-65; and withheld the BlueLinQ system from the

patent examiner even though he believed that the BlueLinQ system was "highly

material" prior art and knew that he had a duty to disclose material information. *Id*. at

31, ¶¶ 66-67. In addition, SonicWALL claims that the BlueLinQ system "renders at

least claims 1-3 and claims 5-8 of the '773 Patent anticipated and/or obvious" and the

'773 patent would not have issued had the BlueLinQ system been disclosed. *Id*. at 31,

¶ 67. In response, zvelo argues that SonicWALL's pleading does not sufficiently assert

facts showing that Holm knew of the alleged material information contained in the

technical manuals of the BlueLinQ system or that Holm intentionally withheld this

information with the specific intent to deceive the PTO. Docket No. 141 at 6-10.

The Court finds that SonicWALL adequately alleges "who" failed to disclose

material information in regard to Holm, a named inventor of the '773 patent subject to

the duty of candor. *See Exergen*, 575 F.3d at 1329. However, as with the SoftPak

allegations, SonicWALL's references to unnamed individuals are deficient. *See* Docket

No. 139 at 28, ¶ 44, and 31, ¶¶ 65 and 68.

With regard to the "what" and "where" circumstances, although SonicWALL identifies the BlueLinQ system as a relevant prior art reference and lists seven claims of the '773 patent to which it alleges the BlueLinQ system applies, Docket No. 139 at 31, ¶¶ 65-67, SonicWALL does not identify the specific elements or limitations of claims 1-3 and claims 5-8 of the '773 patent to which the BlueLinQ system applies and where these limitations are disclosed in the technical manuals of the BlueLinQ system. Without an allegation of what specific information contained in the BlueLinQ system technical manuals allegedly anticipates the claims of the '773 patent, SonicWALL's allegations do not set "forth the particularized factual bases" in support of the circumstances of an inequitable conduct claim.  *See Admixture Pharm.*, 482 F.3d at 1357.  Thus, the Court finds that SonicWALL does not sufficiently allege the "what" and "where" circumstances of its inequitable conduct claim.  *Exergen*, 575 F.3d at 1329.

As to materiality, the Court finds that SonicWALL does not sufficiently plead facts showing how or why the information in the technical manuals of the BlueLinQ system allegedly anticipates or renders obvious the claims of the '773 patent in combination with other prior art.  *Exergen*, 575 F.3d at 1330; 37 C.F.R. § 1.56(b)(1). The fact that the BlueLinQ system discloses a subscription management server, by itself, does not make the BlueLinQ system material because many other prior art references disclose subscription management servers.  *See* Docket No. 139 at 31, ¶ 63.  Accordingly, SonicWALL's failure to identify a function or limitation disclosed in the BlueLinQ system does not allow the Court to reasonably infer the materiality of the BlueLinQ system.  *Exergen*, 575 F.3d at 1327.  Because SonicWALL does not allege with particularity a specific function or limitation disclosed by the BlueLinQ system, the

12

Court finds that SonicWALL does not sufficiently allege the first element of an inequitable conduct claim since it does not assert with particularity the what, where, why, and how circumstances of its inequitable conduct counterclaim. *Exergen*, 575 F.3d at 1330.

With regard to the second element, even taking as true SonicWALL's allegation that Holm was generally aware of the BlueLinQ system, Holm's general awareness of the BlueLinQ system, without more, is not enough to show that Holm had actual knowledge of specific material information contained therein or that he had an intent to deceive the PTO when he allegedly did not disclose this information. *Exergen*, 575 F.3d at 1330; *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1313 (Fed. Cir. 2008) (noting that the required showings of materiality and intent are separate, "and a showing of materiality alone does not give rise to a presumption of intent to deceive").

Based on the foregoing, the Court finds that SonicWALL's pleading does not allege facts establishing a reasonable inference that Holm knew of the alllegedly material information contained in the BlueLinQ system and failed to disclose this information with the specific intent to deceive the PTO. *Exergen*, 575 F.3d at 1331. Accordingly, the Court will dismiss SonicWALL's inequitable conduct counterclaim based on Holm's alleged failure to disclose the BlueLinQ system. *Id*.

### 3. *Instagate System*

SonicWALL alleges that Dietrich and Holm were aware of the existence of the Instagate system, Docket No. 139 at 32, ¶ 69; believed that the Instagate system is designed to function as an application management server, *id*. at ¶ 70; failed to disclose

and intentionally withheld the technical manuals of the Instagate system during the prosecution of the '773 patent even though they knew that the Instagate system was highly material prior art, *id.* at ¶ 74-75; and the technical manuals of the Instagate system render one or more claims of the '773 patent anticipated or obvious. *Id.* at 33, ¶ 76.  In addition, SonicWALL alleges that Holm was aware that zvelo had developed and sold the Instagate system in 1999. *Id.* at 32, ¶ 71.

The Court finds that SonicWALL satisfies the "who" element of an inequitable conduct claim in regard to Holm and Dietrich, but that its references to unnamed individuals are deficient. *See* Docket No. 139 at 32, ¶ 74 and 33, ¶ 77.

With regard to the "what" and "where" circumstances, because SonicWALL does not identify the specific claims to which the Instagate system applies and where in the technical manuals of the Instagate system material information relevant to the claims of the '773 patent can be found, SonicWALL's answer fails to allege with particularity the "what" and "where" circumstances of an inequitable conduct claim. *Exergen*, 575 F.3d at 1329.  As to materiality, the Court finds that SonicWALL does not sufficiently plead facts showing how or why the information in the technical manuals of the Instagate system allegedly anticipates or renders obvious the claims of the '773 patent in combination with other prior art. *Id.* at 1330; 37 C.F.R. § 1.56(b)(1).  As noted above, the fact that the Instagate system discloses a subscription management server, by itself, does not sufficiently establish that the Instagate system is material.  Thus, because SonicWALL does not identify a function or limitation disclosed in the Instagate system or how this function or limitation is material to the patentability of the '773

14

patent, an inference that the Instagate system contains material information does not logically flow from the facts alleged in the answer.  *Exergen*, 575 F.3d at 1327. Accordingly, the Court finds that SonicWALL does not allege with particularity the factual bases for the first element of its inequitable conduct counterclaim.  *Id*. at 1330.

With regard to the second element, even taking as true SonicWALL's allegation that Holm and Dietrich were "substantially involved" in the Instagate system, Docket No. 139 at 32, ¶ 69, the Court finds that this vague allegation, amounting to no more than general awareness of the Instagate system, is not enough to show that Holm and Dietrich had actual knowledge of specific material information contained therein or that they withheld this prior art reference with the intent to deceive the PTO.  *Exergen*, 575 F.3d at 1330.

Based on the foregoing, the Court finds that SonicWALL's counterclaim does not allege facts supporting a reasonable inference that Holm and Dietrich knew of the alllegedly material information contained in the Instagate system and failed to disclose this information with the specific intent to deceive the PTO.  *Exergen*, 575 F.3d at 1331. Accordingly, the Court will dismiss SonicWALL's inequitable conduct counterclaim based on Holm and Dietrich's alleged failure to disclose the Instagate system.  *Id*.

### 4.   *Team Internet System*

SonicWALL alleges that Holm was aware of and substantially involved in developing the Team Internet system, Docket No. 139 at 33, ¶¶ 78-79; knew the Team Internet system was designed and functions as an application management server, *id*. at ¶ 80; and did not disclose the technical manuals of the Team Internet system to the

15

patent examiner, even though Holm knew that the Team Internet system was highly material prior art and understood his duty to disclose material information. *Id.* at 34, ¶¶ 83-84. SonicWALL also alleges that the Team Internet system renders one or more claims of the '773 patent obvious. *Id.* at ¶ 85.

The Court finds that SonicWALL sufficiently alleges the "who" circumstance of an inequitable conduct claim as to Holm, but finds that its references to unnamed individuals are deficient. *See*, *e.g.*, *id.* at ¶¶ 83, 86.

The Court finds that SonicWALL does not sufficiently allege the remaining circumstances of an inequitable conduct claim. First, SonicWALL alleges that the Team Internet system "renders one or more claims of the '773 Patent anticipated and/or obvious," but fails to identify the "what" and "where" circumstances of an inequitable conduct claim. *Exergen*, 575 F.3d at 1329. Because the materiality of a prior art reference is claim dependent, *see Regents of Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1570 (Fed. Cir. 1997), SonicWALL's allegations do not sufficiently allege to which claims of the '773 patent the Team Internet system applies and where the information disclosed in the Team Internet system is located that a reasonable patent examiner would find material. *Id.* Similarly, because SonicWALL does not identify a particular claim limitation or a combination of claim limitations disclosed in the Team Internet system, it does not sufficiently allege *why* the Team Internet system is material or *how* a reasonable examiner would have used this undisclosed information in assessing the patentability of the claims of the '773 patent. *Exergen*, 575 F.3d at 1330.

16

SonicWALL also does not sufficiently allege that Holm had knowledge of the material information in the Team Internet system because SonicWALL does not identify this specific material information. *See Exergen*, 575 F.3d at 1330. In addition, an allegation that Holm "was substantially involved" in developing the Team Internet system does not show that Holm necessarily had knowledge of the specific material information because there are no allegations about what specific role Holm had in the creation of the Team Internet system. Docket No. 139 at 33, ¶ 79. Simply because Holm had a role in developing the Team Internet system, it is not necessarily true that he "also knew of the specific material *information* contained in" the Team Internet system. *Exergen*, 575 F.3d at 1330 (citation omitted; emphasis in original). In conclusion, SonicWALL's pleading does not allege facts establishing that the technical manuals of the Team Internet system contained specific material information relevant to the claims of the '773 patent and that Holm knew of this allegedly material information and intentionally failed to disclose such information to the PTO. *Id*. Accordingly, because SonicWALL's allegations of inequitable conduct with regard to the Team Internet system do not satisfy the requirements of Rule 9(b), the Court will dismiss SonicWALL's inequitable conduct counterclaim based on Holm's alleged failure to disclose the Team Internet system. *See Delano Farms*, 655 F.3d at 1350.

### 5. *Improper Inventorship*

SonicWALL alleges that Dietrich is a named inventor for the '773 patent, Docket No. 139 at 35, ¶ 87; signed a declaration under oath that he invented at least one claim of the '773 patent knowing that an inventor of a patent must contribute to at least one

claim of the proposed patent, *id*. at ¶¶ 88-89; admitted that he did not contribute to the

conception of any elements of any claim disclosed in the '773 patent, *id*. at ¶ 91; and

signed the declaration of inventorship with the specific intent to deceive the PTO.  *Id*. at

¶ 92.  In addition, SonicWALL alleges that, because Dietrich wrongfully signed the

declaration of inventorship, the '773 patent is unenforceable due to inequitable conduct.

*Id*.

Section 256 of Title 35 states, in pertinent part, that:

> The error of omitting inventors or naming persons who are not inventors
> shall not invalidate the patent in which such error occurred if it can be
> corrected as provided in this section.  The court before which such matter
> is called in question may order correction of the patent on notice and
> hearing of all parties concerned and the Director shall issue a certificate
> accordingly.

35 U.S.C. § 256(b).  Inventorship is a question of law and, to qualify as an inventor, one

must contribute to the conception of at least one claim.  *Vanderbilt Univ. v. ICOS Corp.*,

601 F.3d 1297, 1303-04 (Fed. Cir. 2010).  The Federal Circuit has held that statements

made in front of the PTO that deliberately conceal a true inventor's involvement may

give rise to a claim of inequitable conduct and render the patent unenforceable even as

to an innocent co-inventor.  *See Advanced Magnetic Closures, Inc. v. Rome Fastener*

*Corp.*, 607 F.3d 817, 828 (Fed. Cir. 2010).  In *Frank's Casing Crew & Rental Tools, Inc.*

*v. PMR Techs., Ltd.,* 292 F.3d 1363, 1377 (Fed. Cir. 2002), the Federal Circuit adopted

the "one bad apple" rule, whereby the misdeeds of co-inventors or even a patent

attorney can affect the property rights of an otherwise innocent individual.  The rule

focuses on the misdeeds of the individuals responsible for securing the patent and

states that, even if a non-inventor deliberately misrepresented to the PTO that he

invented a patent, his deceit would be sufficient to "spoil[ ] the entire barrel," leaving the

patent unenforceable. *Advanced Magnetic*, 607 F.3d at 828; *see also Stark v.*

*Advanced Magnetics, Inc.*, 119 F.3d 1551, 1556 (Fed. Cir. 1997) (noting that "[t]he

standards for inequitable conduct are not likely to permit enforcement of any patent

procured by deceiving the [PTO]") (citation omitted).  As noted above, to allege with

particularity a claim of inequitable conduct, SonicWALL must sufficiently assert that

Dietrich (1) misrepresented material information to the PTO and (2) had an intent to

mislead and deceive the examiner. *Advanced Magnetic*, 607 F.3d at 829.

The Court finds that SonicWALL sufficiently alleges "who" made a

misrepresentation to the PTO as it identifies Dietrich – a named inventor subject to the

duty of candor. *Exergen*, 575 F.3d at 1330.  With regard to "what" and "where,"

SonicWALL sufficiently alleges that Dietrich misrepresented the fact that he invented an

element or a claim of the '773 patent, even though he testified at a later time that he did

not do so.  Docket No. 139 at 35, ¶ 91.  To the extent zvelo argues that there is no

evidence that Dietrich did not create a claim or an element of the '773 patent, Docket

No. 141 at 11, the Court finds that this argument goes to the merits of inventorship and

that SonicWALL's allegations satsify the requirements of Rule 9(b) because a false

statement of inventorship is an objective indication of a lack of candor. *Exergen*, 575

F.3d at 1329 n. 5.  Therefore, the Court finds that SonicWALL has alleged with

particularity the "where" and "what" circumstances of its inventorship counterclaim. *Id*.

at 1330.

With regard to materiality, because inventorship is "a critical requirement for obtaining a patent," any misrepresentation with regard to inventorship is material. *Advanced Magnetic*, 607 F.3d at 830 (citing *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1321 (Fed. Cir. 2000)).  Thus, because Dietrich's alleged misrepresentation regarding inventorship is material, SonicWALL has sufficiently alleged the who, what, where, why, and how of the first element of an inequitable conduct claim.  *Exergen*, 575 F.3d at 1328.

With regard to the second element, the Court finds that it is reasonable to infer that Dietrich misrepresented that he was an inventor of the '773 patent with an intent to deceive the PTO because he knew or was aware of his duty of candor.  *Advanced Magnetic*, 607 F.3d at 830.  Whether SonicWALL will be able to prove with clear and convincing evidence that Dietrich did not contribute to a single element or claim of the '773 patent is a question on the merits that is not appropriate for resolution at the pleading stage.  Based on the foregoing, the Court finds that SonicWALL has sufficiently pled a claim of inequitable conduct with regard to Dietrich's alleged misrepresentation to the PTO that he was an inventor of the '773 patent.  *Exergen*, 575 F.3d at 1330.  Accordingly, the Court will deny zvelo's motion to dismiss SonicWALL's counterclaim of inequitable conduct based on Dietrich's misrepresentation of inventorship to the PTO.

### 6.   Request for Attorneys' Fees

zvelo requests an award of attorneys' fees for the work its attorneys performed in connection with the present motion to dismiss.  Docket No. 141 at 11.  zvelo, however,

does not cite a statute, a Federal Rule of Civil Procedure, or any other authority which grants a party an award of attorneys' fees for filing a successful motion to dismiss a counterclaim of inequitable conduct.  Accordingly, the Court will deny zvelo's request for attorneys' fees.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiff/Counter-Defendant's Partial Motion to Dismiss Counterclaim Asserted by Defendant/Counter-Plaintiff in Answer to Second Amended Complaint for Patent Infringement [Docket No. 141] is **GRANTED** in part and **DENIED** in part.  It is further

**ORDERED** that the portion of defendant SonicWALL, Inc.'s inequitable conduct counterclaim based on Holm and Dietrich's failure to disclose to the PTO information about the SoftPak Director system, the BlueLinQ system, the Instagate system, and the Team Internet system is dismissed.  SonicWALL may proceed with that portion of its inequitable conduct counterclaim based on Dietrich's misrepresentation of inventorship to the PTO.

DATED September 30, 2013.

BY THE COURT:

 s/Philip A. Brimmer                                
PHILIP A. BRIMMER
United States District Judge